FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 FEB 27 PM 4:07
CLERK'S OFFICE
AT BALTIMORE
BY ___ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. CCB-17-043 |
| v. | Civil No. CCB-17-2740 |
| OLUWAGBENGA AJALA | |

## MEMORANDUM

Federal prison inmate Oluwagbenga Ajala pled guilty to wire fraud conspiracy and, on May 9, 2017, was sentenced to 21 months in prison. Represented by new counsel, he has filed a timely motion to vacate under 28 U.S.C. § 2255. For the reasons that follow, the motion will be denied.

Ajala contends that he was deprived of his Sixth Amendment right to counsel because his attorney failed to advise him properly regarding the immigration consequences of his guilty plea. *See Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). A defendant alleging ineffective assistance of counsel must establish both deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).

In the context of a guilty plea, prejudice is shown by establishing that, but for the deficient advice, the defendant would not have pled guilty but rather would have insisted on going to trial, despite the strength of the evidence against him. *See Lee v. U.S.*, 137 S.Ct. 1958, 1965 (2017); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).[1]

The inquiry in this case does not reach the second step, however, because the record established that Ajala was adequately advised of the likelihood he would be deported as a result of his fraud conviction. Trial counsel, James Crawford, understood that Ajala had also consulted

---

[1] In this case the evidence against Ajala was extremely strong. Had he not pled guilty, he likely would have been convicted of aggravated identity theft in addition to the wire fraud conspiracy

1

an immigration attorney. In an email to his client before the plea, Crawford stated:

> On[e] of your big issues is your visa status and overall ability to stay in this country. I have discussed this with you for months and advised that I cannot represent you nor officially advise you how your conviction in federal court will effect [sic] you.

(Mot. to Vacate, ECF 28-4). Still, Crawford warned Ajala that a conviction "would be detrimental to [him] and mo[s]t likely result in deportation." *Id.*

Consistent with this, at the beginning of the plea colloquy Crawford put this advice on the record:

> MR. CRAWFORD: Now the biggest thing I am concerned about or one of the things that I am concerned about is your status as far as immigration. You are very concerned about it, is that correct?
> THE DEFENDANT: Correct.
> MR. CRAWFORD: *You understand any kind of guilty plea or any type of finding of guilt, whether it is a trial or an admission of guilt would put you in serious jeopardy from being deported from the United States, do you understand that?*
> DEFENDANT: Correct.
> MR. CRAWFORD: You and I talked about that and I understand that you have a separate attorney I think, who is skilled as far as immigration issues are concerned and he or she has advised you is that correct?
> THE DEFENDANT: Correct.

(Trsp. of Plea at pp. 6-7, ECF No. 26). And even more clearly, the plea agreement letter explained that:

> By pleading guilty, the Defendant will also be giving up certain valuable civil rights and *may be subject to deportation or other loss of immigration status.* The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes (including the offense to which the Defendant is pleading guilty) *can lead to adverse immigration consequences including automatic removal from the United States.* Indeed, because the Defendant is pleading guilty to the offense herein, *removal is presumptively mandatory.* Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one,

2

> including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. *The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences and even if the consequence is his automatic removal from the United States.*

(Mot. to Vacate, ECF No. 28-2) (emphasis added). Ajala agreed under oath that he had reviewed the plea agreement with counsel, (Trsp. of Plea at pp. 13-14, ECF No. 26), which is consistent with his signature at the end of the plea letter itself, (Mot. to Vacate, ECF No. 28-2)[2]

Unlike *Lee*, 137 S.Ct. at 1963-68, where trial counsel repeatedly advised his client there was no risk he would face deportation, Crawford warned that the guilty plea put Ajala "in serious jeopardy" of being deported and that deportation was "most likely." The plea letter stated explicitly that removal was "presumptively mandatory," and that the defendant wanted to plead guilty "even if the consequence is automatic removal from the United States." Any failure to state that deportation was completely certain reflects, appropriately, that neither the trial court nor counsel have the authority to make that final determination.[3]

Accordingly, the motion will be denied and no certificate of appealability will issue.[4] A separate order follows.

2/27/18
Date

/s/ _____
Catherine C. Blake
United States District Judge

---

[2] It is true that the district judge did not separately advise Ajala as to the immigration consequences, but he did review the plea agreement with Ajala and of course had already heard Crawford's voir dire of Ajala.
[3] The court is aware of conflicting affidavits from Crawford and Ajala but does not rely on either of them, in light of the undisputed record evidence set forth above. *See Woodfolk v. Maynard*, 857 F.3d 531, 554 (4th Cir. 2017) (recognizing that an affidavit "may be tempered by other evidence of record, such as the transcript" of the defendant's guilty plea proceeding.)
[4] Ajala is of course free to seek a certificate of appealability from the Fourth Circuit.

3